UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

EVA COLEMAN,
Plaintiff,

- against -

EXPERIAN INFORMATION SOLUTIONS, INC.,
Defendant.

---------------------------------------------------------------x

No. 1:26-cv-05519-AMD-RML

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY THIS ACTION, AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR FORMATION-ONLY DISCOVERY AND A JURY TRIAL ON THE ISSUE OF CONTRACT FORMATION**

Dated: New York, New York
November 12, 2026

THE LAW OFFICE OF ELLIOT M. ELO, ESQ. PLLC
Attorneys for Plaintiff Eva Coleman
42 West 48th Street, 2nd Floor
New York, New York 10036-1701
Telephone: (212) 302-1257 | Facsimile: (212) 302-1658 | Cell (917) 923-2423
elliot@elolawfirm.com

## TABLE OF CONTENTS

Preliminary Statement....................5

Statement of Facts....................6

Argument.................... 8

Point I. EIS Waived Any Right to Compel Arbitration....................9

Point II. In the Alternative, No Agreement Was Made....................10

Point III. No Stay May Issue; in the Alternative, Formation-Only Discovery and a Section 4 Jury Trial....................19

Conclusion.................... 21

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Experian Information Solutions, Inc.*, 661 F. Supp. 3d 18 (E.D.N.Y. 2023)................15

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).........................................................12

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986)...........11

*Austin v. Experian Information Solutions, Inc.*, 148 F.4th 194 (4th Cir. 2025)............................16

*Belton v. Experian Information Solutions, Inc.*, No. 1:25-cv-09709, Doc. 34 (N.D. Ill. Sept. 25, 2026)........................................................................................................................ 13

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003)................................................................11

*Borukh v. Experian Information Solutions, Inc.*, 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025)..15

*Chaloh v. Chrysler Capital LLC*, 2026 WL 764624 (E.D.N.Y. Mar. 18, 2026)...........................15

*Cimillo v. Experian Information Solutions, Inc.*, 2023 WL 2473403 (S.D.N.Y. Mar. 13, 2023)..15

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)..................................................11

*Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010)....................11

*Hamilton Life Insurance Co. of New York v. Republic National Life Insurance Co.*, 408 F.2d 606 (2d Cir. 1969)..........................................................................................................................20

*Henriques v. Experian Information Solutions, Inc.*, No. 1:23-cv-06366, Doc. 31 (E.D.N.Y. Oct. 1, 2024), adopted Dec. 4, 2024..................................................................................... 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)........................................18

*Lamonaco v. Experian Information Solutions, Inc.*, 141 F.4th 1343 (11th Cir. 2025).................16

*Levy v. Credit Plus, Inc.*, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023).....................................15

*Meeks v. Experian Information Solutions, Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022)....16

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017)...................................................12

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).........................................................................5

*Newton v. Experian Information Solutions, Inc.*, 2025 WL 2102084 (11th Cir. July 28, 2025)...16

*Oestreicher v. Equifax Information Services, LLC*, 2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024) ...16

*Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2003)...11

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012)...11

*Shrem v. Experian Information Solutions, Inc.*, No. 1:26-cv-04317 (E.D.N.Y.)...17

*Smith v. Spizzirri*, 144 S. Ct. 1173 (2024)...19

*Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir. 2002)...12

*United States v. Olano*, 507 U.S. 725 (1993)...9

**Statutes and Rules**

Federal Arbitration Act, 9 U.S.C. §§ 3, 4...5

28 U.S.C. § 1746...14

Fed. R. Civ. P. 12(f)...5

Fed. R. Civ. P. 30(b)(6)...21

Fed. R. Evid. 602; 803(6); 901(a); 902(11), (13)...13

## PRELIMINARY STATEMENT

This memorandum opposes the motion of Defendant Experian Information Solutions, Inc. ("EIS") to compel arbitration and to stay this action (ECF Nos. 20–22, filed October 27, 2026), and supports Plaintiff's cross-motion for formation-only discovery and a jury trial on the issue of contract formation under 9 U.S.C. § 4. The motion should be denied for three independent reasons.

First, EIS waived any right to compel arbitration. Waiver under *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), is the intentional relinquishment of a known right, judged by conduct, with no prejudice requirement and no arbitration-specific rules. EIS knew of the alleged agreement before it answered: on October 12, 2026, in floating a stipulation that would have routed this dispute to arbitration, EIS's counsel asserted that Plaintiff "has been a CreditWorks member since 9/17/2020." Elo Decl. ¶¶ 3–4 and Ex. A. EIS nevertheless answered on the merits on October 13, 2026 (ECF No. 11), a twenty-page answer responding to the complaint paragraph by paragraph, pleading twenty-six affirmative defenses, and asking that the action "be dismissed in its entirety" with costs and attorneys' fees. Its only reference to arbitration was the hedged Seventh Affirmative Defense: "Experian alleges on information and belief that Plaintiff's claims may be the subject of an arbitration agreement between Plaintiff and Experian." Answer at 18 (ECF No. 11). Plaintiff's Rule 12(f) motion to strike that defense, filed the same day (ECF Nos. 12–14), put its sufficiency in issue. For the two weeks that followed, EIS did not move. It filed anything addressed to arbitration only on October 27, 2026, in response to Plaintiff's pending motion to strike the Seventh Defense: it opposed that motion at 6:59 p.m. (ECF No. 19) and filed this motion at 7:03 p.m. the same evening (ECF Nos. 20–22). A party that claims knowledge of a

right, answers on the merits, seeks dismissal in its entirety, and moves to compel only in response to a pending motion to strike the defense has relinquished the right under *Morgan*.

Second, and in the alternative, EIS has not proven that any agreement was made. Enrollment, presentation of terms, and assent are three separate facts, and EIS must prove each as to Eva Coleman. Its only proof is the declaration of Dan Smith (ECF No. 22), which states a conclusion about "membership enrollment data" and attaches none of it: no enrollment record, no query output, no acceptance timestamp record, no confirmation or welcome communication, no payment record. What it attaches is a blank enrollment form (ECF No. 22-1) and standard terms (ECF No. 22-2). Plaintiff has answered under oath: she has never held any account with EIS or ConsumerInfo.com, Inc., never enrolled in CreditWorks at any tier, never paid either entity, never received any enrollment or terms communication, and never agreed to any Terms of Use or to arbitrate. Coleman Decl. ¶¶ 3–14. The courts that confronted this declarant's showing against a denial reached the opposite result: *Belton* denied the motion and ordered Experian to produce the very record missing here, and *Henriques* recommended denial, which was adopted on December 4, 2024.

Third, no stay may issue, because 9 U.S.C. § 3 operates only when the Court is satisfied that an issue is referable to arbitration under an agreement, and that predicate is unproven. If the Court does not deny the motion outright, Plaintiff cross-moves for formation-only discovery, over ninety days and in no event fewer than sixty, followed by the jury trial on formation that Plaintiff demands under 9 U.S.C. § 4.

## STATEMENT OF FACTS

Plaintiff's claims arise from EIS's conduct as a consumer reporting agency. The complaint, filed September 4, 2026 (ECF No. 1), pleads that EIS, a consumer reporting agency

under the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f), assembled and furnished consumer reports about Plaintiff to third parties while failing to disclose to Plaintiff, on her written requests under 15 U.S.C. § 1681g(a), required information about the sources of information in her consumer file and the recipients of her consumer reports, and that the disclosure EIS did furnish was incomplete and inaccurate. Compl. ¶¶ 1–9, 47–57. The complaint pleads claims under Sections 1681g(a) and 1681e(b) of the Fair Credit Reporting Act and under New York General Business Law § 349 and Article 25. Nothing in the complaint alleges the purchase or use of any consumer-facing subscription service.

On October 12, 2026, before answering, EIS's counsel wrote to Plaintiff's counsel floating a stipulation that this dispute be submitted to binding arbitration. That email asserted as its premise that "Plaintiff has been a CreditWorks member since 9/17/2020," and counsel stated that he had reviewed the declaration of Dan Smith. Elo Decl. ¶¶ 3–4 and Ex. A. Plaintiff declined the next day, demanded that EIS identify and produce the agreement it relies on and the records on which its membership assertion rests, and expressly reserved all rights, objections, and arguments, expressly including waiver. *Id.* ¶¶ 5–6 and Ex. B. EIS answered on October 13, 2026 (ECF No. 11). The Answer runs twenty pages, responds to the complaint paragraph by paragraph, and pleads twenty-six affirmative defenses, the seventh of which reads, in full: "Experian alleges on information and belief that Plaintiff's claims may be the subject of an arbitration agreement between Plaintiff and Experian." Answer at 18 (ECF No. 11). The prayer asks "(1) That Plaintiff take nothing by virtue of the Complaint and that this action be dismissed in its entirety; (2) For costs of suit and attorneys' fees incurred." *Id.* at 19. Plaintiff moved the same day under Rule 12(f) of the Federal Rules of Civil Procedure to strike the Seventh Affirmative Defense as conclusory and as invoking an unenforceable arbitration agreement (ECF

Nos. 12–14). EIS opposed on October 27, 2026 at 6:59 p.m. (ECF No. 19) and filed this motion at 7:03 p.m. the same evening (ECF Nos. 20–22). The motion remains pending and undecided.

The Smith declaration is the whole of EIS's formation proof. Mr. Smith attests that the enrollment databases store "date and time of the consumer's acceptance of the Terms of Use" (Smith Decl. ¶ 1 (ECF No. 22)); that, "[b]ased upon my review of CIC's membership enrollment data," Plaintiff enrolled in CreditWorks on September 17, 2020 (*id.* ¶ 3); that enrollment required a single webform on which consumers were informed that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy" (*id.* ¶ 3); and that "Plaintiff clicked the 'Create Your Account' button, thereby accepting and agreeing" (*id.* ¶ 5). No enrollment record, query output, screenshot of data, acceptance record, confirmation or welcome communication, or payment record is attached. What is attached is a blank webform (ECF No. 22-1) and a printout of the Terms of Use bearing a revision date of August 13, 2020 (ECF No. 22-2). The Terms name ConsumerInfo.com, Inc. as the contracting entity. The word "affiliates" appears nowhere in the Overview's definition of "ECS"; it appears in the arbitration provision, introduced by the words "[f]or purposes of this arbitration provision."

Plaintiff's declaration answers directly. She has never held an account with EIS or ConsumerInfo.com, Inc., including any CreditWorks account; she has never enrolled in CreditWorks at any tier; she has never paid either entity for any product or service; she has never received any enrollment confirmation, terms, or terms-update communication from either entity; and she has never agreed to any Terms of Use, arbitration agreement, or delegation provision. Coleman Decl. ¶¶ 3–14.

## ARGUMENT

## POINT I — EIS WAIVED ANY RIGHT TO COMPEL ARBITRATION BY ANSWERING ON THE MERITS AFTER ASSERTING KNOWLEDGE OF THE ALLEGED AGREEMENT

Waiver of the right to arbitrate is ordinary waiver. In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Supreme Court held that a federal court assessing waiver asks whether the party intentionally relinquished a known right, judged by its conduct. Waiver, the Court explained, "is the intentional relinquishment or abandonment of a known right." *Id.* at 417 (*quoting United States v. Olano*, 507 U.S. 725, 733 (1993)). Prejudice is not a condition of finding waiver, and the Court forbade arbitration-specific variants of federal procedural rules: a court "may not devise novel rules to favor arbitration over litigation," and federal courts "may not create arbitration-specific variants of federal procedural rules" based on the policy favoring arbitration. *Id.* at 417–419.

Knowledge is established on EIS's own account. On October 12, 2026, EIS's counsel proposed that the parties stipulate that this dispute "be submitted to binding arbitration," on the stated premise that "Plaintiff has been a CreditWorks member since 9/17/2020," and stated that he had reviewed the declaration of Dan Smith. Elo Decl. ¶¶ 3–4 and Ex. A. EIS thus asserted, before it answered, that Plaintiff had been a member for six years. A right cannot be unknown to a party that describes it, in writing, with a date, before pleading.

The conduct that followed relinquished the right. EIS instead answered on the merits on October 13, 2026 (ECF No. 11): twenty pages, paragraph-by-paragraph responses, twenty-six affirmative defenses, and a prayer that Plaintiff "take nothing," that "this action be dismissed in its entirety," and for costs and attorneys' fees. Its single reference to arbitration was the Seventh Affirmative Defense, pleaded "on information and belief," that Plaintiff's claims "may be" the subject of an arbitration agreement. Answer at 18 (ECF No. 11). For the two weeks that

followed, EIS did not move. It filed anything addressed to arbitration only on October 27, 2026, in response to Plaintiff's pending motion to strike the Seventh Defense: it opposed that motion at 6:59 p.m. (ECF No. 19) and filed the motion to compel at 7:03 p.m. (ECF Nos. 20–22). That conduct is inconsistent with an intention to insist on arbitration: EIS asked this Court to decide the case, and it defended the pleaded basis for arbitration as a litigated issue rather than invoking it as a right removing the case from the Court.

Four features of that sequence establish waiver under *Morgan*. First, a hedged information-and-belief allegation is not an invocation of a known right. On EIS's own pleading, it did not know whether any agreement existed: "may be" preserves a possibility; it does not assert a right. If the allegation is taken at face value, EIS had no known right to invoke in October, which also undercuts its formation proof. If it is not taken at face value, the hedge was a deliberate choice to litigate without committing to the right. Either way, the Answer does not save the right. Second, even a pleaded defense does not immunize merits litigation under *Morgan*'s conduct test. EIS answered on the merits in full, sought dismissal with costs and fees, and contested a motion addressed to the defense itself. Third, Plaintiff's October 13, 2026 declination expressly reserved waiver. Elo Decl. ¶¶ 5–6 and Ex. B. That declination also demanded "the records on which Experian bases its membership assertion." Elo Decl. Ex. B. The motion filed two weeks later attached none of them. Fourth, candor requires acknowledging that the defense was pleaded one day after the stipulation was declined and the motion two weeks later. Neither fact defeats waiver: the defense was conditional and disclaimed knowledge, and *Morgan* requires no prejudice showing. Waiver is an independent ground to deny the motion.

## POINT II — IN THE ALTERNATIVE, NO AGREEMENT WAS MADE, BECAUSE EXPERIAN PROVES NONE OF ENROLLMENT, PRESENTATION, OR ASSENT AS TO EVA COLEMAN

## A. THE FRAMEWORK: THE MOVANT MUST PROVE A MADE AGREEMENT, AND FORMATION IS FOR THE COURT

Section 4 of the Federal Arbitration Act permits a court to compel arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Where "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof," and the party alleged to be in default may demand a jury trial of the issue. *Id.* The Second Circuit applies a standard akin to that used in summary judgment practice: the movant must first make a prima facie showing that an agreement exists, and the opposing party must then come forward with evidence placing the making of the agreement genuinely in issue. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118–121 (2d Cir. 2012). Whether any agreement was formed, and between whom, are threshold questions for the Court. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–945 (1995). *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986): "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Where the evidence permits no genuine dispute, the Court may resolve the issue on papers; where it does not, Section 4's trial mechanism governs, and the Court may not weigh competing affiants' credibility. *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003).

Formation is governed by ordinary contract principles under New York law and, for an online transaction, resolves into three separate facts the movant must prove as to this plaintiff: enrollment, presentation of the terms so that a reasonably prudent user would have been on

inquiry notice of them, and unambiguous manifestation of assent. *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017); *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26–27 (2d Cir. 2002). In *Meyer*, the offeree is bound only if a reasonably prudent user "would be on inquiry notice of the terms" and the user's act unambiguously manifested assent. 868 F.3d at 75–80. In *Specht*, the court refused to hold that "a reasonably prudent offeree in plaintiffs' position would necessarily have known or learned of the existence" of the license terms before acting. 306 F.3d at 26–27. The presumption of arbitrability governs the scope of a made agreement, not whether an agreement exists, and the policy authorities EIS collects, including *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) each presupposes an agreement in writing that was made.

**B. THE SMITH DECLARATION PROVES NONE OF THE THREE FACTS, AND IT FAILS THE EVIDENCE RULES EXPRESSLY**

The declaration describes records and withholds them. Paragraph 1 states, in substance, that Experian's electronic databases store consumer enrollment information, including "date and time of the consumer's acceptance of the Terms of Use," and that Mr. Smith retrieved and located this consumer's membership information and confirmed "the date and time of enrollment, the version of the Terms of Use she agreed to, and the exact path the consumer encountered when completing her enrollment into CreditWorks." Paragraph 3 states that, "[b]ased upon my review of CIC's membership enrollment data," Plaintiff enrolled in CreditWorks on September 17, 2020, through a single webform. Paragraph 5 concludes that Plaintiff clicked the "Create Your Account" button, "thereby accepting and agreeing." Those are conclusions about records, and no record is attached: not the enrollment entry, not a query

output, not an acceptance timestamp record, and not a payment record for the paid membership the declaration asserts.

The Federal Rules of Evidence state, in terms, why that showing is insufficient. Under Rule 602, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Smith does not claim to have witnessed any act by Eva Coleman; his claimed knowledge is of a database and of what a consumer would have encountered: knowledge of a process, not of this plaintiff's act. Under Rule 901(a), the proponent must produce evidence sufficient to support a finding that an item of evidence is what the proponent claims it is. The item on which the motion depends, the enrollment record for Eva Coleman, has not been produced at all, so nothing has been authenticated. Under Rules 902(11) and 902(13), such records are self-authenticating only with a certification by a custodian or another qualified person; no such certification accompanies the declaration. Under Rule 803(6), such a record is admissible only on a foundation, shown by custodian testimony or a complying certification, that it was made at or near the time by someone with knowledge and kept in the course of a regularly conducted activity as a regular practice. EIS has laid no such foundation, because it has offered no record for the foundation to attach to.

Two features deepen the problem. First, the template does not hold still across cases. In *Belton v. Experian Information Solutions, Inc.*, No. 1:25-cv-09709, Doc. 34 (N.D. Ill. Sept. 25, 2026), the Smith declaration described two webforms and a 2017 enrollment followed by a 2024 re-enrollment; here it describes one webform and a 2020 enrollment. A declaration reshaped for each plaintiff is litigation boilerplate. Second, the declaration was not written about Eva Coleman at all: it describes "his upgrades to a paid membership" (Smith Decl. ¶ 5), and EIS's

memorandum closes by asking the Court to direct "Plaintiff to arbitrate his claims" (ECF No. 21 at 12).

That is the identical showing, from the identical declarant, held insufficient in *Belton* on September 25, 2026. The *Belton* court denied the motion and ordered Experian to file a more thorough affidavit attaching a query-results report or at least a screenshot of the data on which Smith relied, because the declaration offered no concrete facts on the "membership enrollment data." *Belton*, No. 1:25-cv-09709, Doc. 34. A movant who claims a database records each consumer's acceptance, and who bears the burden of proof, cannot carry that burden with a conclusion about the database's contents while producing none of them. The same gap was fatal in substance in *Henriques v. Experian Information Solutions, Inc.*, No. 1:23-cv-06366, Doc. 31 (E.D.N.Y. Oct. 1, 2024) (Report and Recommendation), adopted by Judge Kovner on December 4, 2024, where the court noted the absence of payment records or other evidence of the account and recommended denial and a factfinding, after which a bench trial on formation was held on January 22, 2025.

**C. PLAINTIFF'S SWORN DENIAL PLACES THE MAKING OF THE ALLEGED AGREEMENT IN ISSUE, AND THE COURT MAY NOT RESOLVE THE CONFLICT BY WEIGHING THE DECLARATIONS**

Plaintiff's declaration is categorical: no account, no enrollment, no payment, no enrollment communications, no assent. Coleman Decl. ¶¶ 3–9, 12–14. It is made under penalty of perjury under 28 U.S.C. § 1746. Two sworn statements are in direct conflict on the only fact that matters, and the statute assigns that conflict to a trial, with a jury available on demand.

EIS will respond that a denial must be more than a denial. The declaration is effective because it is sworn by the party with personal knowledge of her own conduct. A categorical

denial is affirmative evidence that no transaction occurred; a professed failure of memory, the posture of the compelled cases, is not.

**D. THE DECISIONS EXPERIAN ARGUES WERE DECIDED WITHOUT A SWORN DENIAL OF ENROLLMENT; THE DECISIONS THAT FACED ONE DENIED THE MOTION**

The decisions EIS argues at length establish a pattern that defeats this motion: Experian wins these motions when enrollment is conceded, admitted, or undisputed, because on such a record there is nothing to try. The memorandum's assertion that every court to consider this webform has ruled for Experian also begs the question, because whether Plaintiff completed any webform is the issue, and the universal claim is inaccurate, as *Belton* and *Henriques* show.

In *Chaloh v. Chrysler Capital LLC*, 2026 WL 764624, at *6 (E.D.N.Y. Mar. 18, 2026): "Plaintiff concedes that he enrolled in CreditWorks in 2018 and agreed to the Terms of Use Agreement." The only dispute was which version of the terms governed and whether its scope reached the claims; *Chaloh* decided nothing about proof of enrollment, because proof was unnecessary. *Borukh v. Experian Information Solutions, Inc.*, 2025 WL 1220042, at *3 (E.D.N.Y. Apr. 28, 2025), is the same: the plaintiff conceded under oath that he "signed up for free credit monitoring at www.experian.com," *Borukh* Decl. ¶¶ 3–4, and argued only that he had not seen an arbitration agreement. *Alvarez v. Experian Information Solutions, Inc.*, 661 F. Supp. 3d 18, 22 (E.D.N.Y. 2023), states the July 10, 2019 signup in its background, sourced in part to the plaintiff's own opposition papers; the actual dispute was party identity. *Cimillo v. Experian Information Solutions, Inc.*, 2023 WL 2473403, at *5 (S.D.N.Y. Mar. 13, 2023), records that the plaintiff used the service to monitor her credit "and she does not dispute that through the July 2019 TOU, she entered into an agreement to arbitrate with EIS"; her position was non-recollection, not a denial of assent. *Levy v. Credit Plus, Inc.*, 2023 WL 2644352, at *1–*2

(S.D.N.Y. Mar. 27, 2023), is captioned against Credit Plus, Inc., not EIS, and the signup fact was not denied under oath. *Oestreicher v. Equifax Information Services, LLC*, 2024 WL 1199902, at *4 (E.D.N.Y. Mar. 20, 2024), records that "Plaintiff does not directly contest the validity of the agreement to arbitrate or argue that enforcing it would be unconscionable." The out-of-circuit decisions are no different: in *Austin v. Experian Information Solutions, Inc.*, 148 F.4th 194, 208 n.5 (4th Cir. 2025), "*Austin* does not appear to dispute that he enrolled in an Experian-affiliated credit monitoring service"; in *Lamonaco v. Experian Information Solutions, Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025), "*Lamonaco* does not contest these facts" and does not deny enrolling; in *Newton v. Experian Information Solutions, Inc.*, 2025 WL 2102084, at *1 (11th Cir. July 28, 2025), the district court had rejected the Smith declaration because it "did not state what *Newton* in particular saw when she signed up but instead only spoke to what a consumer would *see* when signing up"; and *Meeks v. Experian Information Solutions, Inc.*, 2022 WL 17958634 (9th Cir. Dec. 27, 2022), an unpublished memorandum disposition, addressed only party status, on an undisputed signup.

The *Henriques* court made the same survey of the thirty-two cases Experian cited there and did "not find a single instance where a plaintiff actually disputed signing up for a CreditWorks account." *Henriques*, No. 1:23-cv-06366, Doc. 31.

**E. THE MEMORANDUM'S MATERIAL MISDESCRIPTIONS DEFEAT ANY REQUEST FOR THE BENEFIT OF THE DOUBT ON THIS RECORD**

Because EIS asks the Court to find a contract on a paper record, the accuracy of its description of that record matters. The memorandum misdescribes it in material respects. First, the memorandum states that the "Overview and Acceptance of Terms" section of the Terms of Use defines ECS to include its affiliates, such as EIS. ECF No. 21 at 10. The Overview says no

such thing. It provides that "the terms 'we,' 'us' or 'ECS' refer to ConsumerInfo.com, Inc., an Experian® company (also known as Experian Consumer Services), and referred to as 'Experian' on the Websites, its predecessors in interest, successors and assigns, and any of its third party service providers (including, without limitation, cloud service providers)." ECF No. 22-2 at 5–6 (PageID ## 204–205). The affiliate-inclusive phrase appears only within the arbitration provision. *Id.* Mr. Smith repeats the description under oath, attesting that the Terms define "ECS" to include its "parent entities, subsidiaries, [and] affiliates." Smith Decl. ¶ 6 (ECF No. 22). Second, the memorandum quotes the arbitration promise as an agreement to "arbitrate all disputes and claims between us that arise out of or relate to this Agreement to the maximum extent permitted by law." ECF No. 21 at 10. The document says: "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration." ECF No. 22-2. The quotation deletes the limitation to disputes "directly related to the Services or Websites," deletes the governing-law exception, and inserts the broader phrase "or relate to," and the deleted limitation matters here, where Plaintiff's claims arise from consumer reporting, not from any website service. Third, the memorandum describes Exhibit 1 as "a true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks." ECF No. 21 at 5. Exhibit 1 is a blank form; it does not record an appearance to anyone. Fourth, the universal claim is inaccurate. *Belton* denied the motion on this declarant's showing, and *Henriques* recommended denial, which was adopted. And in *Shrem v. Experian Information Solutions, Inc.*, No. 1:26-cv-04317 (E.D.N.Y.), the Court ordered the Section 4 jury-trial process on the plaintiff's demand, *Shrem*, ECF No. 33 (Sept. 23, 2026), and later, after formation discovery and the plaintiff's deposition,

granted Experian's motion on that case's formation record, *Shrem*, Doc. 117 (Nov. 10, 2026). *Shrem* is cited only for the proposition that the Section 4 trial mechanism was ordered on a contested formation record in this District; its later disposition turned on that plaintiff's own deposition testimony, absent here.

**F. EXPERIAN HAS NOT PROVEN THAT IT IS A PARTY TO ANY AGREEMENT, AND THE PARTY-STATUS CASES PRESUPPOSE THE AGREEMENT WHOSE MAKING IS IN ISSUE**

The motion is brought by EIS, but the Terms name a different contracting party: ConsumerInfo.com, Inc., doing business as Experian Consumer Services. ECF No. 22-2. EIS appears in the exhibit as a source from which credit information is obtained under the Fair Credit Reporting Act authorization paragraph, not as a party to the Terms. Its answer is the arbitration provision's definitional sentence, which, "[f]or purposes of this arbitration provision," sweeps in affiliates. *Id.* That sentence operates only if an arbitration provision between these parties exists, which is the very question in issue. The cases EIS cites for direct enforcement share a common premise: a contract concededly made, with the only question being whether the affiliate could enforce it. Until EIS proves that Eva Coleman made an agreement with someone, there is no agreement for EIS to be a party to.

**G. THE DELEGATION CLAUSE CANNOT DECIDE WHETHER AN AGREEMENT WAS FORMED**

EIS argues, in the alternative, that all issues are for the arbitrator, citing the delegation language in the Terms and *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019). Delegation clauses bind only parties who made the agreement containing them. *Henry Schein* itself is framed on a made contract: "when the parties' contract delegates the question of the

arbitrability of a particular dispute to an arbitrator, a court may not override the contract." 586 U.S. at 65. Courts decide whether an agreement exists before they enforce any term of it, including a delegation term. *Granite Rock*, 561 U.S. at 299; *First Options*, 514 U.S. at 944–945. Plaintiff denies the predicate: that she ever entered the agreement containing the delegation clause.

## POINT III — NO STAY MAY ISSUE ON AN UNPROVEN PREDICATE; IN THE ALTERNATIVE, THE SECTION 4 COURSE IS FORMATION-ONLY DISCOVERY FOLLOWED BY A JURY TRIAL, WITH MERITS PROCEEDINGS IN ABEYANCE

### A. THE REQUESTED SECTION 3 STAY MUST BE DENIED

EIS requests a stay under 9 U.S.C. § 3, citing *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024). *Spizzirri* answers the stay-or-dismiss question that arises after a court has found an enforceable agreement and compelled arbitration. At 144 S. Ct. at 1175, the Court explained that Section 3 provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," and it held that Section 3 compels a stay and leaves the court without discretion to dismiss. Section 3 by its terms operates only "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration," and only once "the court in which such suit is pending" is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3. On this record the Court cannot be so satisfied, because the existence of the agreement that would make any issue referable is itself in genuine dispute, and because a stay applicant that has waived the right, as shown in Point I, is in default in proceeding with arbitration under Section 3's proviso. The abeyance Plaintiff requests below is distinct: it preserves the status quo without

presuming the agreement's existence, while a Section 3 stay presumes it. The stay request should be denied.

**B. IN THE ALTERNATIVE, FORMATION-ONLY DISCOVERY AND A SECTION 4 JURY TRIAL**

If the Court does not deny the motion outright, Plaintiff invokes Section 4's procedure in full. Plaintiff demands a jury trial on the issue of the making of the alleged agreement. 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof" and "the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury"); *Hamilton Life Insurance Co. of New York v. Republic National Life Insurance Co.*, 408 F.2d 606, 609 (2d Cir. 1969). Plaintiff is the party alleged to be in default within the meaning of Section 4. Plaintiff makes this demand in her opposition, in advance of any return day on the motion, and so preserves it under the statute's timing term.

A jury trial on formation cannot fairly be held on a record the movant has kept one-sided. Plaintiff therefore cross-moves for discovery limited to the formation issue, sequenced so that the documents precede the testimony. Written discovery should come first: the enrollment database query run as to Plaintiff and its output; the acceptance timestamp record for the alleged September 17, 2020 enrollment; any enrollment confirmation, welcome, terms, or terms-update communications generated for or sent to the alleged account; any payment records for the paid membership the declaration asserts; the enrollment screens in use in September 2020; and any Internet Protocol address or session records associated with the alleged enrollment, with

interrogatories and requests directed to the enrollment attribution and to the drafting and reuse of the Smith declaration template. Depositions should follow production: Dan Smith, and a designee under Rule 30(b)(6) of the Federal Rules of Civil Procedure on the enrollment records, their organization, retention, and search. Plaintiff requests ninety days, and in no event fewer than sixty: the written phase requires production of records EIS has withheld, and the depositions cannot be taken productively until those records are produced. Discovery should be confined to formation; merits discovery and all merits deadlines should be held in abeyance pending the Section 4 trial, and no stay should issue in the interim.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) deny Defendant's motion to compel arbitration in its entirety, on the independent ground of waiver and, in the alternative, for failure to prove that an agreement to arbitrate was made; (2) deny Defendant's request for a stay under 9 U.S.C. § 3; (3) in the alternative only, grant Plaintiff's cross-motion, order formation-only discovery for ninety days and in no event fewer than sixty, on the sequence set out in Point III.B, hold merits discovery and deadlines in abeyance meanwhile, and set the making of the alleged agreement for a jury trial under 9 U.S.C. § 4 upon Plaintiff's demand; and (4) grant such other and further relief as the Court deems just.

Dated: New York, New York

November 12, 2026

THE LAW OFFICE OF ELLIOT M. ELO, ESQ. PLLC

/s/ Elliot M. Elo
Elliot M. Elo, Esq.
42 West 48th Street, Floor 2

New York, New York 10036-1701
Telephone: (212) 302-1257
Facsimile: (212) 302-1658
Cell (917) 923-2423
Email elliot@elolawfirm.com

Attorneys for Plaintiff Eva Coleman

**CERTIFICATE OF COMPLIANCE**

I, Elliot M. Elo, Esq., certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law complies with the word-count limitation of that rule. The memorandum contains 5,310 words, as counted by the word-processing program used to prepare it, excluding the caption, the table of contents, the table of authorities, the signature block, and the certificates, as Local Civil Rule 7.1(c) provides. The memorandum does not exceed 8,750 words.

/s/ Elliot M. Elo
Elliot M. Elo, Esq.

**CERTIFICATE OF SERVICE**

I, Elliot M. Elo, Esq., hereby certify that on November 12, 2026, I caused the foregoing letter application for leave to file the opposition package out of time, the Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and in Support of Plaintiff's Cross-Motion, the Declaration of Eva Coleman, the Declaration of Elliot M. Elo, Esq. with Exhibits A and B, the Notice of Cross-Motion for Formation-Only Discovery and a Jury Trial on the Issue of Contract Formation, the Demand for Jury Trial on the Issue of Contract Formation under 9 U.S.C. § 4, and the [Proposed] Order to be filed through the Court's CM/ECF system, which will send notification of such filing to all counsel of record in this action.

Dated: New York, New York

November 12, 2026

/s/ Elliot M. Elo
Elliot M. Elo, Esq.